### In re SOLOWAY & KATZ.

(District Court, D. Connecticut. January 27, 1912.)

#### No. 2,743.

1. BANKRUPTCY (§ 238*)—COMPELLING PRODUCTION OF BOOKS BY BANKRUPT—PETITION—HEARING.

  An order by a referee in bankruptcy to compel a bankrupt to produce missing books of account, made on a petition of the trustee not as a mere incident of the bankrupts' examination at a statutory meeting of creditors and in face of the bankrupts' denial of power to produce, is void when made without a hearing on the petition.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 406; Dec. Dig. § 238.*]

2. BANKRUPTCY (§ 238*)—PETITION FOR PRODUCTION OF MISSING BOOKS—VERIFICATION.

  The lack of verification of a petition by a trustee in bankruptcy for an order to compel the production by the bankrupt of missing books of account is not fatal.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 406; Dec. Dig. § 238.*]

3. BANKRUPTCY (§ 229*)—ORDER FOR PRODUCTION BY BANKRUPT OF MISSING BOOKS OF ACCOUNT—PUNISHMENT FOR REFUSAL TO OBEY.

  A lawful order by a referee in bankruptcy to compel a bankrupt to produce missing books of account is a condition precedent to action by the court for punishment for refusal to obey.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. § 229.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Soloway & Katz, bankrupts. Petition for review of order of referee requiring bankrupts to deliver books and papers to the trustee. Order set aside.

See, also, 195 Fed. 103.

The following are the order and report of Henry G. Newton, Referee:

### Order for the Production of Books and Papers.

Upon the petition of H. W. Asher, Esq., of New Haven, trustee in bankruptcy in the above-entitled matter, filed with me, Henry G. Newton, referee in bankruptcy for New Haven county, Conn., on this 5th day of January, 1912, at 11:30 o'clock a. m., the bankrupts and their attorney being present and said petition having been fully heard, and it appearing to me that the bankrupts are able to produce the books and papers in said petition mentioned, it is ordered: That Maurice Soloway and Samuel Katz, both of New Haven, Conn., who were in business in said New Haven as Soloway & Katz, the above-named bankrupts, produce the books and papers in the annexed petition mentioned, to wit, a purchase ledger, a notebook, and a cashbook, covering a period from April 12, 1911, to the date of the bankruptcy, together with a lot of sheets containing the October charges of sales, before me, this 5th day of January, 1912, at 2:30 o'clock p. m., at United States Courtroom, New Haven, Conn.

### Report.

To the United States District Court for the District of Connecticut:

I, Henry G. Newton, one of the referees in bankruptcy in this court, do hereby respectfully report and certify that on the 5th day of January, 1912, at 1 o'clock p. m., I made an order requiring Maurice Soloway and Samuel Katz, the bankrupts herein, to produce before me at the United States Courtroom in New Haven, Conn., at 2:30 p. m. on said day, the following books, to wit, the purchase ledger, the notebook, the cashbook covering the period from April 12, 1911, to the date of the bankruptcy, and a lot of loose sheets containing the sales during the month of October, 1911, all of which books and papers relate to and were used in the business of the bankrupts, and are necessary to enable the trustee to properly administer the estate and conduct the examination of the bankrupts, and which books and papers were in the possession or under the control of said bankrupts. At the time of the making of said order, said bankrupts were before me in person and by counsel. A copy of said order is filed here with and made part hereof.

I certify that the said bankrupts failed to comply with said order, and that the time within which to comply has now expired.

I therefore find that said bankrupts are in contempt of court, and recommend that they be punished for contempt and committed until they have delivered or caused to be delivered said books and papers to me as said referee, or to the trustee of said estate.

J. P. Goodhart, for trustee.
De Forest & Klein, for bankrupt.

PLATT, District Judge. The story of this bankruptcy told in the referee's certificate presents a situation which cannot be too vigorously condemned. We find confiding and credulous creditors and so-called "merchants," with a capacity of scheming for which no appropriate qualifying word comes to the writer's mind. It is a sad tale and leaves a bitter taste on the mental palate. The court desires to aid the referee in all lawful ways to make the best of an unusually bad bargain. It was said long ago by a wise judge that "hard cases make bad law," and that sentiment has now come to be recognized as one of our legal axioms.

The point to be determined on this review seems fairly simple.

[1] The statutory creditors' meeting was in progress, and the probe was being applied by counsel for the trustee, to fathom the depths of the depravity into which those on the surface have a right to think the bankrupts had descended. Suddenly, acting for the trustee, he launched against the bankrupts a petition asking that certain books and papers, which would be useful and perhaps essential, in an endeavor to uncover and discover the details of the bankruptcy, be delivered over. This petition and the order of the referee based thereon were not mere incidents of the bankrupts' examination. The language of the order makes it clear that a very different object was sought to be attained. · The bankrupts are ordered jointly to deliver over certain things, and it is physically impossible to examine two bankrupts jointly in any court at any time. The petition demonstrates a laudable effort on the part of the trustee to get books and papers which he needs, in order that he may properly perform his duties as an officer of the court and the representative of the creditors, and so far as I am now advised, if, after a lawful hearing upon a petition properly brought for such purpose, the referee, putting aside all that has passed before, shall be of the opinion which he now holds, but which was gained in an irregular way, it will be his duty to issue an order for their production. Such an order, if not obeyed, would, when brought to my attention, form a solid basis upon which I would be authorized to insist that the bankrupts should satisfy me beyond a reasonable doubt that neither of them was able to comply with the order. Then, and only then, could I be in a position to deal with them lawfully. The trouble with the case as it now stands is that the bankrupts have had no day in court at all upon the issues which the petition presents, or, granting the last ounce of concession to the views of the referee, *no such* day in court as would furnish him the power to issue the order which is under review.

The referee admits in his certificate that, in the face of the bankrupts' denial of power to produce, he has, in reaching the opinion that they can produce if they wish to do so, been influenced by all the facts and circumstances which have come to his knowledge during the creditors' meeting.

It seems elementary to me that, during and after the hearing on the trustee's petition, the bankrupts are entitled to know what facts he intends to examine when he formulates in his mind his final conclusion. It is a serious thing to be sent to jail, and every citizen, no matter how bad he may be, is entitled to a full and fair trial, before he goes there.

[2] I do not intend to spend the rest of my days crossing bridges before I come to them, but a word or two concerning some criticism of the order not heretofore discussed, in this intentionally brief memorandum, may not be inappropriate. The lack of verification to the petition is an extra technical objection and standing alone would be brushed aside. If a new situation shall arise in which I may become an actor, that cause for petty fault-finding will probably be eliminated. That the order was against the two bankrupts jointly is a more serious

criticism. I cannot say that it is not possible that a state of facts may exist which would warrant the trustee in demanding that they should jointly produce the missing books, but I am bound to say that it seems very improbable. If further hearing shall be had, of course, the proof must be addressed to the question of the physical ability of these bankrupts to comply with the order. They are separate human machines, each endowed with the usual organs common to such machines; each is capable of moving, acting, and thinking by himself.

By what process of reasoning they can be amalgamated and assimulated into one organism, with a capacity for obeying or refusing to obey, is a mystery which the writer is too burdened with other matters of moment to find the time to solve.

After this perhaps profitless excursion we return for a last moment to the matter in hand.

[3] A lawful order by the referee is a condition precedent to action by the court regarding punishment for refusal to obey it, and I am therefore compelled to return the one now under review to the referee, who will take such further action as he may deem expedient.

